**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FORNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  18 C 3474 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| CITY OF CHICAGO, et al., | ) | |
| | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**DEFENDANT CITY OF CHICAGO'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant, City of Chicago ("City"), by its attorney, Terrence M. Burns of Reiter Burns LLP, for its answer to plaintiff's complaint, states:

1.     This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343 and 1367.

**ANSWER**:    Defendant City admits plaintiff's complaint purports to assert claims pursuant to federal statutes and Illinois law that seek to invoke the jurisdiction of this Court. Defendant City denies liability to plaintiff for any and all claims asserted in the complaint.

**I.     Parties**

2.     Plaintiff Robert Forney is a resident of the Northern District of Illinois.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 2.

3.     Defendant City of Chicago is an Illinois municipal corporation.

**ANSWER**:    Defendant City admits it is a municipal corporation duly incorporated under the laws of the State of Illinois.

4.     Defendants Ronald Watts, Alvin Jones, Lamonica Lewis, Kallatt Mohammed, and Elsworth J. Smith Jr. (the "individual officer defendants") were at all relevant times acting under color of their offices as Chicago police officers. Plaintiff sues the individual officer defendants in their individual capacities.

**ANSWER**:    Defendant City admits Defendants Watts, Alvin Jones, Lamonica Lewis, Kallatt Mohammed, and Elsworth J. Smith Jr. (collectively, the "Defendant Officers") were duly appointed and sworn police officers employed by the Chicago Police Department ("CPD") at certain times alleged in the complaint.  Defendant City admits the complaint purports to sue the individual defendant officers in their individual capacities.  Defendant City denies any remaining allegations contained in paragraph 4 inconsistent with the foregoing.

5.      Defendant Philip Cline was at all relevant times Superintendent of the Chicago Police Department. Plaintiff sues Cline in his individual capacity.

**ANSWER**:    Defendant City admits Defendant Cline served as Superintendent of Police from approximately November 2003 to April 2007.   Defendant City admits the complaint purports to sue Defendant Cline in his individual capacity.  Defendant City denies any remaining allegations contained in paragraph 5 inconsistent with the foregoing.

6.      Defendant Debra Kirby was at all relevant times the Assistant Deputy Superintendent of the Chicago Police Department, acting as head of the Chicago Police Department Internal Affairs Division. Plaintiff sues Kirby in her individual capacity.

**ANSWER**:    Defendant City admits Defendant Kirby served as Assistant Deputy Superintendent of the CPD in charge of its Internal Affairs Division from approximately July 2004 through March 2008.  Defendant City admits the complaint purports to sue Defendant Kirby in her individual capacity.  Defendant City denies any remaining allegations contained in paragraph 6 inconsistent with the foregoing.

## II.    Overview

7.      Plaintiff Robert Forney is one of many victims of the criminal enterprise run by convicted felon and former Chicago Police Sergeant Ronald Watts and his tactical team at the Ida B. Wells Homes in the 2000's.

**ANSWER**:    Defendant City admits Ronald Watts is a convicted felon and former sergeant in the CPD.  Defendant City is without knowledge or information sufficient to form a

2

belief as to the truth or falsity of the remaining allegations contained in paragraph 7.

8. The Watts Gang of officers engaged in robbery and extortion, used excessive force, planted evidence, fabricated evidence, and manufactured false charges.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang of officers," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City admits that Defendant Watts was arrested and charged with Theft of Government Funds, and that he pleaded guilty to those charges in July 2013. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 8.

9. Several other victims of the Watts Gang are currently prosecuting federal lawsuits. *Baker v. City of Chicago,* No. 16-cv-8940; *White v. City of Chicago,* No. 17-cv-2877; *Powell v. City of Chicago,* No. 17-cv-5156; *Carter v. City of Chicago,* No. 17-cv-7241; *Shenault Jr. v. City of Chicago, Case Number Pending, Shenault Sr. v. City of Chicago, Case Number Pending.*

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City admits the existence of the federal lawsuits listed in paragraph 9. Defendant City makes no answer to the legal conclusions contained in this paragraph. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 9.

10. High ranking officials within the Chicago Police Department were aware of the Watts Gang's criminal enterprise, but failed to take any action to stop it.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph

3

incorporating that term. Defendant City admits the CPD participated with federal authorities in a joint investigation of criminal allegations made against Defendant Watts. Defendant City denies the remaining allegations contained in paragraph 10.

11. The Chicago Police Department's official policies or customs of failing to discipline, supervise, and control its officers, as well as its a "code of silence," were a proximate cause of the Watts Gang's criminal enterprise.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the "official policies and customs" of the CPD alleged in this paragraph. Defendant City further denies any "official policies or customs" of the CPD were a proximate cause of Defendant Watts' criminal activities.

12. The facts of this case provide a striking example of these official policies and customs and of the Watts Gang's criminal enterprise: like others falsely arrested and falsely charged by the Watts Gang, Forney made a formal complaint to the Chicago Police Department. Also like other victims, Forney's complaint was not adequately investigating and did not lead to any discipline of the offending officers.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City admits the CPD initiated a Complaint Log ("C.L.") investigation, C.L. #1004698, based on allegations of misconduct made by plaintiff. Defendant City admits C.L. #1004698 was not converted to a Complaint Register investigation. Defendant City denies any "official policies or customs" of the CPD were a proximate cause of Defendant Watts' criminal activities, and it denies the remaining allegations contained in this paragraph inconsistent with the foregoing.

13. Watts Gang officers arrested Forney without probable cause, fabricated evidence

4

against him, and framed him for drug possession, a charge for which he served nearly two years.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies any remaining allegations in paragraph 13 premised upon that assertion.

14. Based on the powerful evidence that has become known about the Watts Gang's nearly decade-long criminal enterprise, on February 16, 2018, the Circuit Court of Cook County granted the State's motion for a new trial and dismissed the charges against Forney.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 14.

15. On March 15, 2018, the Circuit Court of Cook County granted Forney a certificate of innocence.

**ANSWER**: Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 15.

16. Forney brings this lawsuit to secure a remedy for his illegal incarceration, which was caused by: the Watts Gang officers, the failure of high-ranking officials within the Chicago Police Department to stop the Watts Gang, the code of silence within the Chicago Police Department, and the Chicago Police Department's defective discipline policy.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant admits plaintiff's complaint seeks damages, but it denies

liability to plaintiff for any of the claims and/or damages asserted in the complaint. Defendant City denies the remaining allegations contained in paragraph 16.

### III. False Arrest and Illegal Prosecution of Plaintiff

17. On January 22, 2007, plaintiff was arrested by the individual officer defendants in a common area of a building at the Ida B. Wells Homes.

**ANSWER**: Based on police department reports, Defendant City admits plaintiff was arrested on January 22, 2007, by Defendant Officers Smith and Jones in a hallway of a building at the Ida B. Wells housing complex, 575 E. Browning, in Chicago. Defendant City denies any remaining allegations contained in paragraph 17 inconsistent with the foregoing.

18. At the time of plaintiffs arrest:

a. None of the individual officer defendants had a warrant authorizing the arrest of plaintiff;

b. None of the individual officer defendants believed that a warrant had been issued authorizing the arrest of plaintiff;

c. None of the individual officer defendants had observed plaintiff commit any offense; and

d. None of the individual officer defendants had received information from any source that plaintiff had committed an offense.

**ANSWER**: Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 18(a) and 18(b). Based on police department reports, Defendant City denies the allegations contained in paragraphs 18(c) and 18(d).

19. After arresting plaintiff, the individual officer defendants conspired, confederated, and agreed to fabricate a false story in an attempt to justify the unlawful arrest, to cover-up their wrongdoing, and to cause plaintiff to be wrongfully detained and prosecuted.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 19.

20. The false story fabricated by the individual officer defendants included their false claim that they had arrested plaintiff after seeing him sell drugs to two people.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 20.

21. The acts of the individual officer defendants in furtherance of their scheme to frame plaintiff included the following:

      a. One or more of the individual officer defendants prepared police reports containing the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

      b. One or more of the individual officer defendants attested through the official police reports that they witnessed the false story, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights;

      c. Defendant Watts formally approved one or more of the official police reports, knowing that they contained the false story; and

      d. One or more of the individual officer defendants communicated the false story to prosecutors, and each of the other individual officer defendants failed to intervene to prevent the violation of plaintiff's rights.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 21.

22. The wrongful acts of the individual officer defendants were performed with knowledge that the acts would cause plaintiff to be wrongfully held in custody and falsely prosecuted for an offense that had never occurred.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 22.

23. Shortly after his arrest, plaintiff mailed a letter to the Chicago Police Department, making a formal complaint about the wrongful acts of the individual officer defendants.

**ANSWER**: Defendant City admits police department documents include a letter dated March 30, 2007, purportedly written by Robert Forney Jr., making a complaint about the alleged actions of "Detectives" E. Smith and Watts, and other officers. Defendant City denies any remaining allegations contained in this paragraph inconsistent with the foregoing.

24. The Chicago Police Department did not interview any of the individual officer

7

defendants in connection with its investigation of plaintiff's formal complaint.

**ANSWER**: Defendant City admits the file materials from C.L. #1004698 do not reflect an interview of any of the named defendant officers as part of that investigation.

25. The Chicago Police Department found plaintiffs complaint to be "unfounded," in part because plaintiff did not respond to a certified letter that was mailed to his home address in Chicago.

**ANSWER**: Defendant City admits C.L. #1004698 was classified as "Unfounded." Defendant City admits documents in the file from C.L. #1004698, reflect that a certified letter was sent to the alleged victim residing at the subject residence, Cornelia Lucas, and that Ms. Lucas did not respond to the letter or contact the IAD investigator. Defendant City denies the remaining allegations contained in this paragraph inconsistent with the foregoing.

26. The Chicago Police employee who sent the letter knew or should have know that plaintiff would not receive the letter at his home address because plaintiff was in custody.

**ANSWER**: Defendant City admits documents in the file from C.L. #1004698, reflect that a certified letter was sent to the alleged victim residing at the subject residence, Cornelia Lucas, and that Ms. Lucas did not respond to the letter or contact the IAD investigator. Defendant City denies the letter was addressed to plaintiff. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in paragraph 26.

27. Plaintiff was charged with 10 drug offenses because of the wrongful acts of the individual officer defendants.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 27.

28. Plaintiff knew that proving that the individual officer defendants had concocted the charges against him would not be possible.

**ANSWER**: Defendant City denies knowledge or information of the misconduct

alleged against the individual defendants, and it therefore denies the allegations in paragraph 28 premised upon those allegations. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in paragraph 28.

29. Accordingly, even though he was innocent, plaintiff pleaded guilty to one charge of drug possession on September 5, 2007, and received a five year prison sentence.

**ANSWER**: Defendant City admits on information and belief plaintiff pleaded guilty to one count of possession of a controlled substance on or around September 5, 2007, and was eventually sentenced to 5 years in custody of the Illinois Department of Corrections. Defendant City denies the remaining allegations contained in paragraph 29.

30. Plaintiff was deprived of liberty during his incarceration because of the above-described wrongful acts of the individual officer defendants.

**ANSWER**: Defendant City denies knowledge or information of the misconduct alleged against the individual defendants, and it therefore denies the allegations in paragraph 30.

31. Plaintiff was continuously in custody from his arrest on January 22, 2007 until he was released on parole from the Illinois Department of Corrections on January 16, 2009.

**ANSWER**: Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 31.

### IV. Plaintiff's Exoneration

32. Plaintiff challenged his conviction after he learned that federal prosecutors and lawyers for other wrongfully convicted individuals had discovered the Watts Gang's criminal enterprise.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of remaining allegations contained in paragraph 32 concerning

plaintiff's alleged reasons for challenging his conviction.

33. On February 16, 2018, the Circuit Court of Cook County granted the State's motion to set aside plaintiffs conviction; immediately thereafter, the Court granted the State's request to *nolle prosequi* the case.

**ANSWER**: Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 33.

34. On March 15, 2018, the Circuit Court of Cook County granted plaintiff a certificate of innocence.

**ANSWER**: Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraph 34.

**V. Plaintiff's Arrest and Prosecution Were Part of a Long-Running Pattern Known to High Ranking Officials within the Chicago Police Department**

35. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the Chicago Police Department had received numerous civilian complaints that defendant Watts and the Watts Gang were engaging in robbery, extortion, the use of excessive force, planting evidence, fabricating evidence, and manufacturing false charges against persons at the Ida B. Wells Homes.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information prior to 2007 alleging Defendant Watts was engaging in criminal misconduct against persons at the Ida B. Wells housing complex. Defendant City denies any remaining allegations in paragraph 35 inconsistent with the foregoing.

36. Criminal investigators corroborated these civilian complaints with information they obtained from multiple cooperating witnesses.

**ANSWER**: Defendant City admits investigators obtained statements from certain

cooperating witnesses alleging Defendant Watts was engaging in criminal misconduct against persons at the Ida B. Wells housing complex. Defendant City is without knowledge or information sufficient to form a belief as to the truth or falsity of any remaining allegations contained in paragraph 36.

37. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, defendants Cline and Kirby knew about the above-described credible allegations of serious wrongdoing by Watts and the Watts Gang and knew that criminal investigators had corroborated these allegations.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information prior to 2007 alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department participated with federal authorities in a joint investigation of those allegations. Defendant City denies any remaining allegations contained in paragraph 37 inconsistent with the foregoing.

38. Defendants Cline and Kirby also knew, before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, that, absent intervention by the Chicago Police Department, Watts and his gang would continue to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information prior to 2007 alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells

11

housing complex, and that CPD's Internal Affairs Department participated with federal authorities in a joint investigation of those allegations. Defendant City denies any remaining allegations contained in paragraph 38 inconsistent with the foregoing.

39. The Internal Affairs Division of the Chicago Police knew about the lawlessness of Watts and his gang by 2004.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. To the extent the allegations of this paragraph are directed against the named defendants, Defendant City admits the CPD received information alleging Defendant Watts was engaging in criminal misconduct against individuals at the Ida B. Wells housing complex, and that CPD's Internal Affairs Department was participating with federal authorities in 2004 in a joint investigation of those allegations. Defendant City denies any remaining allegations in paragraph 39 inconsistent with the foregoing.

40. Defendants Cline and Kirby had the power and the opportunity to prevent Watts and his gang from continuing to engage in the above-described wrongdoing.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations of paragraph 40 as phrased.

41. Defendants Cline and Kirby deliberately chose to turn a blind eye to the pattern of wrongdoing by Watts and his gang.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term

12

"Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations contained in paragraph 41.

42. As a direct and proximate result of the deliberate indifference of defendants Cline and Kirby, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations contained in paragraph 42.

## VI. Official Policies and Customs of the Chicago Police Department Were the Moving Force behind the Defendants' Misconduct

43. At all relevant times, the Chicago Police Department maintained official policies and customs that facilitated and condoned the Defendants' misconduct.

**ANSWER**: Defendant City denies the allegations in paragraph 43.

### A. Failure to Discipline

44. At all relevant times, the Chicago Police Department maintained a policy or custom of failing to discipline, supervise, and control its officers. By maintaining this policy or custom, the City caused its officers to believe that they could engage in misconduct with impunity because their actions would never be thoroughly scrutinized.

**ANSWER**: Defendant City denies the allegations in paragraph 44.

45. Before plaintiff's arrest, policymakers for the City of Chicago knew that the Chicago Police Department's policies or customs for disciplining, supervising, and controlling its officers were inadequate and caused police misconduct.

**ANSWER**: Defendant City denies the allegations in paragraph 45.

46. Despite their knowledge of the City's failed policies and customs for disciplining, supervising, and controlling its officers, the policymakers failed to take action to remedy these

problems.

**ANSWER**: Defendant City denies it had "failed policies and customs for disciplining, supervising, and controlling its officers," and it therefore denies the allegations of paragraph 46, which are premised upon that assertion.

47. Before the Watts Gang engineered plaintiff's above-described wrongful arrest, detention, and prosecution, the individual officer defendants had been the subject of numerous formal complaints of official misconduct.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts Gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City admits on information and belief each of the individual defendants was the subject of complaints alleging misconduct against them as police officers. Defendant City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation constitutes evidence the alleged misconduct occurred. Defendant City denies any remaining allegations or inferences contained in paragraph 47 inconsistent with the foregoing.

48. As a direct and proximate result of the Chicago Police Department's inadequate policies or customs for disciplining, supervising, and controlling its officers and the policymakers' failure to address these problems, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff; as described above.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations contained in paragraph 48.

14

**B.** **Code of Silence**

49.    At all relevant times, the Chicago Police Department maintained a "code of silence" that required police officers to remain silent about police misconduct. An officer who violated the code of silence would be severely penalized by the Department.

**ANSWER**:    The City denies the allegations of paragraph 49.  The City further states that any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

50.    At all relevant times, police officers were trained at the Chicago Police Academy not to break the code of silence. Officers were instructed that "Blue is Blue. You stick together. If something occurs on the street that you don't think is proper, you go with the flow. And after that situation, if you have an issue with that officer or what happened, you can confront them. If you don't feel comfortable working with them anymore, you can go to the watch commander and request a new partner. But you never break the code of silence."

**ANSWER**:    Defendant City denies the allegations contained in paragraph 50, and further states that any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

51.    This "code of silence" facilitated, encouraged, and enabled the individual officer defendants to engage in egregious misconduct for many years, knowing that their fellow officers would cover for them and help conceal their widespread wrongdoing.

**ANSWER**:    Defendant City denies the allegations contained in paragraph 51.

52.    Consistent with this "code of silence," the few people within the Chicago Police Department who stood up to Watts and his gang or who attempted to report their misconduct were either ignored or punished, and the Watts Gang was thereby able to engage in misconduct with impunity.

**ANSWER**:    Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term.  Defendant City denies the remaining allegations contained in paragraph 52.

53.    Watts and his gang are not the first Chicago police officers whom the City of

Chicago allowed to abuse citizens with impunity while the City turned a blind eye.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to the individuals plaintiff alleges to be part of the argumentative, vague, and undefined term "Watts and his gang," and it therefore makes no answer or response to the allegations in this paragraph incorporating that term. Defendant City denies the remaining allegations contained in paragraph 53.

54. One example of this widespread practice is Chicago police officer Jerome Finnigan, who was convicted and sentenced on federal criminal charges in 2011. One of the charges against Finnigan involved his attempt to hire a hitman to kill a police officer whom Finnigan believed would be a witness against him.

**ANSWER**: Defendant City admits former police officer Jerome Finnigan was convicted and sentenced on criminal charges in 2011, and admits on information and belief one of the charges against Finnigan was based on his alleged attempt to hire someone to kill a police officer whom Finnigan understood might be a potential witness against him in criminal proceedings. Defendant City denies the allegation it "turned a blind eye" to Finnigan's misconduct or had a "widespread practice" of turning a blind eye to police officer misconduct. Defendant City denies the remaining allegations contained in paragraph 54.

55. Finnigan was part of a group of officers in the Defendant City's Special Operations Section who carried out robberies, home invasions, unlawful searches and seizures, and other crimes.

**ANSWER**: Defendant City admits Jerome Finnigan and other members of the CPD's Special Operations Section were convicted of various criminal charges. Defendant City denies any remaining allegations contained in paragraph 55 inconsistent with the foregoing.

56. Finnigan and his crew engaged in their misconduct at around the same time that plaintiff was subjected to the abuses described above.

**ANSWER**: Defendant City lacks knowledge or information sufficient to form a belief as to identities of the individuals plaintiff alleges to be part of Finnigan's "crew." Defendant

16

City denies knowledge or information of the misconduct alleged against the individual defendants in the complaint, and it therefore denies the remaining allegations in paragraph 56.

57.     Finnigan, like the defendants in this case, had been the subject of many formal complaints of misconduct.

**ANSWER**:     Defendant City is without knowledge or information sufficient to form a belief as to the meaning of the vague and argumentative term "many."   In further response, Defendant City admits only that the Defendants Officers, as well as Finnigan, had been the subjects of complaints of misconduct over the course of their careers.   Defendant City denies a complaint alleging misconduct that results in the opening of a Complaint Log or Complaint Register investigation constitutes evidence that the alleged misconduct occurred.   Defendant City denies any remaining allegations contained in paragraph 57 inconsistent with the foregoing.

58.     Finnigan revealed at his criminal sentencing hearing in 2011, "You know, my bosses knew what I was doing out there, and it went on and on. And this wasn't the exception to the rule. This was the rule."

**ANSWER**:     Defendant City admits on information and belief Finnigan made the statement attributed to him in paragraph 58 at his criminal sentencing hearing in 2011. Defendant City denies knowledge or information of the truth or falsity of the statement made by Finnigan, and it therefore denies the remaining allegations contained in paragraph 58.

59.     Defendants Watts and Mohammed were criminally charged in federal court in February 2012 after shaking down a federal informant they believed was a drug dealer.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 59.

60.     Defendant Mohammed pleaded guilty in 2012.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 60.

61.     Defendant Watts pleaded guilty in 2013.

**ANSWER**:     Defendant City admits the allegations contained in paragraph 61.

62.     In the case of *Obrycka v. City of Chicago et al.*, No. 07-cv-2372 (N.D. Ill.), a

17

federal jury found that as of February 2007, "the City [of Chicago] had a widespread custom and/or practice of failing to investigate and/or discipline its officers and/or code of silence."

**ANSWER**: Defendant City admits the jury entered a verdict against it on a *Monell* claim in *Obrycka v. City of Chicago, et al.*, Case No. 07 C 2372, but states that the District Court in *Obrycka* subsequently noted the basis for the jury's verdict was "unclear" and was "based on the unique facts of [that] case." Defendant City denies the *Obrycka* case is applicable to the facts and circumstances alleged in plaintiff's complaint.

63. In December 2015, Chicago Mayor Rahm Emanuel acknowledged the continued existence of the code of silence within the Chicago Police Department; Emanuel, speaking in his capacity as Mayor, admitted that the code of silence leads to a culture where extreme acts of abuse are tolerated.

**ANSWER**: The City admits that on December 9, 2015, Mayor Rahm Emanuel stated, in part, the following: "This problem is sometimes referred to as the Thin Blue Line. Other times it is referred to as the code of silence. It is the tendency to ignore, deny, or in some instances cover up the bad actions of a colleague or colleagues." The City denies any "code of silence" within the CPD is a pervasive, widespread, and well-settled custom or practice to which the City's chief policymakers have been deliberately indifferent. The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

64. In April 2016, the City's Police Accountability Task Force found that the code of silence "is institutionalized and reinforced by CPD rules and policies that are also baked into the labor agreements between the various police unions and the City."

**ANSWER**: Defendant City admits the quoted language in paragraph 64 is contained within the April 2016 report issued by the Police Accountability Task Force. Defendant City denies this statement is applicable to the facts and circumstances alleged in plaintiff's complaint. The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

18

65.     In an official government report issued in January 2017, the United States Department of Justice found that "a code of silence exists, and officers and community members know it."

**ANSWER**:     Defendant City admits the quoted language in paragraph 65 is contained within the January 2017 Department of Justice Report entitled "Investigation of the Chicago Police Department."   Defendant City denies this statement is applicable to the facts and circumstances alleged in plaintiff's complaint.   The City further states any "code of silence" is directly contrary to the official written rules, policies, and training of the CPD.

66.     The same code of silence in place during the time period at issue in the *Obrycka* case and recognized by the Mayor, the Task Force, and the Department of Justice was also in place when plaintiff suffered the wrongful arrest, detention, and prosecution described above.

**ANSWER**:     Defendant City denies the allegations contained in paragraph 66.

67.     As a direct and proximate result of the City's code of silence, Watts and his gang continued to engage in robbery and extortion, use excessive force, plant evidence, fabricate evidence, and manufacture false charges against persons at the Ida B. Wells Homes, including but not limited to the wrongful arrest, detention, and prosecution of plaintiff, as described above.

**ANSWER**:     Defendant City denies the allegations contained in paragraph 67.

## VII.   Claims

68.     As a result of the foregoing, all of the defendants caused plaintiff to be deprived of rights secured by the Fourth and Fourteenth Amendments.

**ANSWER**:     Defendant City makes no answer or response to the allegations of paragraph 68 to the extent directed against other defendants.   As directed against it, Defendant City denies the allegations contained in paragraph 68.

69.     As a supplemental state law claim against defendant City of Chicago only: as a result of the foregoing, plaintiff was subjected to a malicious prosecution under Illinois law.

**ANSWER**:     Defendant City denies the allegations contained in paragraph 69.

70.     Plaintiff hereby demands trial by jury.

**ANSWER**:     Defendant City admits plaintiff's complaint includes a jury demand.

**AFFIRMATIVE DEFENSES**

Defendant, City of Chicago, without prejudice to its denials and all other statements in its answer and elsewhere, for its affirmative defenses to plaintiff's complaint, states:

1.      To the extent any individual employees of the City of Chicago or its police department are not liable as alleged in the complaint, the City would not be liable.  745 ILCS 10/2-109.

2.      Defendant City is not liable for the claims alleged under state law because a public employee is not liable for his or her acts or omissions in the execution or enforcement of any law unless such acts or omissions constitute willful and wanton conduct.  745 ILCS 10/2-202.

3.      Under the Illinois Tort Immunity Act, defendants are not liable under state law for any injury caused by the act or omission of another person.  745 ILCS 10/2-204.

4.      Plaintiff's claims in the complaint are barred by the applicable statutes of limitations.

5.      Plaintiff's claims in the complaint are barred by the doctrines of *res judicata* and collateral estoppel.

6.      The City of Chicago is immune from the imposition of punitive damages under both state and federal law.  Punitive damages cannot be imposed against a municipality in a §1983 action.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  Moreover, under Illinois law, the City cannot be required to indemnify an employee for punitive damages, nor may it pay a judgment for punitive damages on behalf of an employee.  745 ILCS 10/2-102.

7.      As to plaintiff's state law claims, Defendant City is not liable to pay attorney's fees as "the law in Illinois clearly is that absent a statute or contractual agreement 'attorney fees

20

and the ordinary expenses and burdens of litigation are not allowable to the successful party.'" *See Kerns v. Engelke*, 76 Ill. 2d 154, 166 (1979).

8.      To the extent any injuries or damages claimed by plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton and/or other wrongful conduct on the part of plaintiff as reflected in the public record, including but not limited to police reports and/or his guilty plea, any verdict or judgment obtained by plaintiff must be reduced by an amount commensurate with the degree of fault attributed to plaintiff by the jury in this case.

9.      To the extent plaintiff failed to mitigate any of his claimed injuries or damages, any verdict or judgment obtained by plaintiff must be reduced by application of the principle a plaintiff has a duty to mitigate his or her damages.

10.      Plaintiff's complaint fails to state a claim for relief against the City under the Fourth or Fourteenth Amendment that is plausible on its face.

> a.      Neither plaintiff's fabrication claim nor his malicious prosecution claim is actionable as a federal due process claim;
>
> b.      Even if otherwise actionable, plaintiff's guilty plea defeats his fabrication claim;
>
> c.      Plaintiff's Fourth Amendment claim for detention without probable cause is time-barred; and,
>
> d.      Plaintiff's derivative failure to intervene and conspiracy claims are not actionable.

To the extent plaintiff's constitutional claims in the complaint fail to state actionable claims, his *Monell* claim against the City likewise fails to state an actionable claim. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003) (Where a plaintiff cannot establish a constitutional violation, he has no claim against the municipality).

## **JURY DEMAND**

Defendant City of Chicago respectfully requests a trial by jury.

Dated:  July 17, 2018                                  Respectfully submitted,


By: s/ Paul A. Michalik
One of the Attorneys for Defendant,
CITY OF CHICAGO

Terrence M. Burns
Paul A. Michalik
Daniel M. Noland
Elizabeth A. Ekl
Katherine C. Morrison
Reiter Burns LLP
311 South Wacker Drive, Suite 5200
Chicago, IL 60606
(312) 982-0090 (telephone)
(312) 429-0644 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on **July 17, 2018**, I electronically filed **Defendant City of Chicago's**

**Answer to Plaintiff's Complaint** with the Clerk of the Court using the ECF system, which sent

electronic notification of the filing on the same day to:

| *Attorneys for Plaintiff* | *Attorneys for Defendants Alvin Jones,* |
|---|---|
| Joel A. Flaxman | *Lamonica Lewis, Elsworth J. Smith, Jr.* |
| Kenneth N Flaxman | Andrew M. Hale |
| Kenneth N. Flaxman, P.C. | Brian Stefanich |
| 200 South Michigan Avenue | Jennifer Bitoy |
| Suite 201 | Hale Law LLC |
| Chicago, IL 60604-6107 | 53 W. Jackson Blvd., Suite 330 |
| (312) 427-3200 | Chicago, IL 60604 |
| jaf@kenlaw.com | 312-341-9646 |
| knf@kenlaw.com | 312-341-9656 (fax) |
|  | ahale@ahalelaw.com |
|  | bstefanich@ahalelaw.com |
|  | jbitoy@halelaw.com |

s/ Paul A. Michalik

23